# IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF SOUTH CAROLINA
## CHARLESTON DIVISION

| | |
|---|---|
| Vania Mack, | )    CIVIL ACTION NO. 2:16-1323-RMG-BM |
| | ) |
|            Plaintiff, | ) |
| | ) |
| v. | )    **REPORT AND RECOMMENDATION** |
| | ) |
| Detyens Shipyards, Inc. and Hightrak, | ) |
| d/b/a Hitrak Staffing, Inc., | ) |
| | ) |
|            Defendants. | ) |
| _____ | ) |

This action has been filed by the Plaintiff asserting claims of sexual harassment and retaliation against the Defendants in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et. seq. Plaintiff also asserts a state law claim for negligent hiring, training, and supervision.

The Defendants filed a motion for summary judgment pursuant to Rule 56, Fed.R.Civ.P., on August 29, 2017. Plaintiff filed a memorandum in opposition to the Defendants' motion on September 26, 2017. The Defendants were thereafter granted any extension of time until September 29, 2017 file a reply memorandum, but no reply was ever filed. The Defendants' motion is now before the court for disposition.[1]

---

[1]This case was automatically referred to the undersigned United States Magistrate Judge for all pretrial proceedings pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(e) and (g), D.S.C. The Defendants have filed a motion for summary judgment. As this is a dispositive motion, this Report and Recommendation is entered for review by the Court.



Plaintiff alleges in her Complaint that on or about March 2015, she "began working for Defendant Detyens through Defendant Hitrak, as a laborer". Complaint, ¶ 11.[3] Plaintiff alleges that on or about June 14, 2015, she was sexually harassed by another employee, Herman Johnson. Plaintiff alleges that she reported this harassment to various supervisors, and that she was thereafter terminated in retaliation for reporting this sexual harassment.

In her **First Cause of Action**, which is titled "Sexual Harassment Title VII of Civil Rights Act of 1964", Plaintiff asserts a sexual harassment claim against the "Defendant Company" for allowing continued sexual harassment to occur after the Defendant had been informed that the contact was unwanted, by allowing Johnson to maintain his presence near the Plaintiff while at work, and by refusing to remove the Plaintiff from the hostile work environment and sexual harassment. Plaintiff also alleges that the "Defendant Company" retaliated against her by terminating her employment for engaging in protected conduct; i.e., reporting sexual harassment.[4] In her **Second**

---

[2]The evidence has been set forth and considered in the light most favorable to the Plaintiff. Pittman v. Nelms, 87 F.3d 116, 118 (4th Cir. 1996).

[3]Although Plaintiff identifies each Defendant separately; Id., ¶ ¶ 5-6; in both her First (Title VII sexual harassment/retaliation) and Second (State law negligence claim) Causes of Action she refers to both Defendants collectively as the "Defendant Company". Similarly, in the "Request for Relief" section of the Complaint, Plaintiff refers to both Defendants collectively as "the Defendant".

[4]Although Plaintiff asserts both a sexual harassment claim (briefed as a hostile work environment claim) and a retaliation claim in her First Cause of Action, these are actually two entirely separate and distinct claims that should have been alleged in separate causes of action. Murphy v. Suffolk County Community College, No. 10-251, 2011 WL 5976082, at * 7 (E.D.N.Y. Nov. 29, 2011) [Noting, inter alia, that Plaintiff's hostile work environment claim and retaliation claim are distinct claims that should be alleged in separate counts]. However, as the Defendants have addressed both claims in their motion for summary judgment, Plaintiff's failure to assert these claims in separate counts is not a basis on which to dismiss one or both of these claims at this time. See Brooks v. Ross,
(continued...)



**Cause of Action**, for "negligent hiring, training and supervision", Plaintiff alleges that the "Defendant" was negligent, wanton, reckless and/or acted with deliberate indifference by failing to adequately monitor and supervise the hiring practices of its personnel to ensure that only qualified applicants were hired, by failing to adequately train personnel, and by failing to supervise and correct actions of its personnel when they knew or should have known of improper conduct. Plaintiff seeks monetary damages against the "Defendant". See generally, Plaintiff's Complaint.

The evidence submitted with respect to the harassment incident at issue is essentially undisputed. This evidence shows that on June 14, 2015, Plaintiff was working in the hold of the cargo section of a ship when at one point she was bending over to do something when another employee, Herman Johnson, grabbed her from behind. Plaintiff's Deposition, pp. 56-57. Plaintiff described the incident as follows:

> When I was bending over, when he came down, when he, you know, touched me - - grabbed me from the back, I stood up and I said, what the f***? And I turned around and I started fighting him. I started hitting him. He was just standing there and just looking at me. And I was like - - I was like, okay, Vania calm down, because this guy could rape you, kill you and throw you in one of these tanks and no one will ever find you.[5] And after, when I fought him, when I started hitting him, he looked at me. And I stood there and I looked at him to see what he was going to do. He walked away. When he walked away, I went to a different part, different section of the area. And I was saying, you know, I hope he hurries and leaves so I can leave, because I didn't want - - I was thinking, should I run up the ladder? I didn't want to entice - - I didn't want to do anything that's going to get him to - - you know, get him angry or whatnot. I didn't know where his mind was at.

Plaintiff's Deposition, p. 58.

---

[4](...continued)
578 F.3d 574, 581 (7th Cir. 2009)[requirement is that Plaintiff's allegations provide sufficient notice to defendants of the plaintiff's claim].

[5]Plaintiff testified that at the time she and Johnson were in a small confined space, and that there was no one else around. Plaintiff's Deposition, pp. 56-57.



Plaintiff testified that prior to this incident, she was not familiar with Johnson, and that she had never seen Johnson on a boat with her crew. Plaintiff testified that "that's what scared me about the situation, that he obviously was watching me". Id., p. 65. Plaintiff testified that after Johnson went up the ladder, she went up after him, and "just took off" and went to her supervisor. Id., pp. 58-59. Plaintiff testified that she immediately reported what had happened to her supervisor "Waddell", and that Waddell then reported what had happened to Joe Gordine. Id., pp. 59-60. Plaintiff testified that Gordine then called her in (this was that same day), and that she told Gordine that Johnson had come up behind her while she was bending over and "grabbed me from my vagina to my rear end. His hand is big. When he touched my butt area, he touched my vagina". Id., pp. 60-61. When asked if Gordine believed her, Plaintiff testified "yes". Id., p. 61. Gordine told Plaintiff that he was going to report what had happened to "Andy", who was Gordine's boss. Id., pp. 61-62. Plaintiff testified that she then went home. Id.

Plaintiff testified that when she reported to work the following day, she was "called off the job" to go meet with Andy Anderson, Joe Mack, "Ray", "Paul" and "Ms. Vicky". Id., pp. 63-64, 66. Plaintiff testified that during her meeting with the supervisors, they asked Plaintiff what she wanted to have done, and that she told them she wanted Johnson arrested. Plaintiff further testified that she also wanted him not to work in the same ships as she worked in. When Plaintiff was asked

> Did you tell them, you guys don't have to fire him, but just keep him away from me in a different ship? You made it clear that you wanted him to work on ships other than ones you were on?

Plaintiff responded

> I said - - yeah, I probably said that. Yeah, I did say I don't want him near me.

Id., p. 67.



4

Plaintiff further testified that after she met and spoke with her supervisors, when she went back to the ship she saw Johnson "being escorted off the ship". <u>Id</u>., p. 66. When Plaintiff was asked is she knew what had happened to Johnson, Plaintiff testified that it was her understanding that he was terminated "that very day", and that she had never seen him again since then. <u>Id</u>., p. 68. Plaintiff also testified that she had never talked to Johnson before this incident other than to say "hi" - that she had never had a conversation with him, and that the only time she had ever seen him was at the shipyard when he was introduced to her and a coworker as Chris Johnson's brother. <u>Id</u>., p. 68.

When Plaintiff was asked if she thought Joe Gordine had handled the situation properly, Plaintiff said "yes". When asked the same question about Andy Anderson, Plaintiff said "yes". Plaintiff testified she could not say how anyone else had handled the situation - - that she had told them what happened but did not know what they had done afterwards. However, Plaintiff confirmed that Johnson was terminated, that she "felt relieved" that Johnson had been terminated, and that she had then returned to work. <u>Id</u>., p. 70. Plaintiff also testified that she never had any further meetings with anybody about the Herman Johnson incident after the day he was terminated, but that she did try to pursue criminal charges through the police, who advised her that she should talk to a lawyer. <u>Id</u>., pp. 71-73.

<u>Discussion</u>

The Defendants have moved for summary judgment on all of Plaintiff's claims. Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Rule 56, Fed.R.Civ.P.



The moving party has the burden of proving that judgment on the pleadings is appropriate. Temkin v. Frederick County Comm'rs, 945 F.2d 716, 718 (4th Cir. 1991). Once the moving party makes this showing, however, to avoid summary judgment the opposing party must respond to the motion with specific facts showing there is a genuine issue for trial. Baber v. Hosp. Corp. of Am., 977 F.2d 872, 874-75 (4th Cir. 1992).

## I.

### (Sexual Harassment/Hostile Work Environment Claim)

Plaintiff asserts a claim for hostile work environment/sexual harassment in her First Cause of Action. Whether characterized as a claim for "hostile work environment" or "sexual harassment", in order to proceed with this claim Plaintiff is required to show that the offending conduct was 1) unwelcome, 2) based on a factor covered by Title VII, 3) was sufficiently severe or pervasive to alter the conditions of Plaintiff's employment and create an abusive work environment, and 4) that there is some basis for imposing liability on the employer. Guessous v. Fairview Prop. Investments, LLC, 828 F.3d 208, 221 (4th Cir. 2016); Ocheltree v. Scollon Productions, Inc., 308 F.3d 351, 356 (4th Cir. 2002), rehearing en banc 335 F.3d 325 (4th Cir. 2003), cert denied, 124 S.Ct. 1406 (2004) [sexual harassment]; EEOC v. Cent. Wholesalers, Inc., 573 F.3d 167, 175 (4th Cir. 2009) [hostile work environment]. Defendants argue that they are entitled to summary judgment on this claim because Plaintiff has failed to submit evidence sufficient to establish either the third or fourth prong of the proof scheme required for establishing this claim.

With respect to the third prong, Defendants argue that the incident alleged by the Plaintiff (assumed to be true for purposes of summary judgment) does not qualify as sufficiently severe or pervasive conduct to alter the conditions of Plaintiff's employment and create an abusive



work environment, as it was only one incident occurring one time and lasting only a few seconds. See generally Burlington Industries, Inc. v. Ellerth, 524 U.S. 742, 768 (1998) (quoting Snell v. Suffolk City, 782 F.2d 1094, 1103 (2d Cir. 1986) ["To establish a hostile atmosphere, . . . . Plaintiffs must prove more than a few isolated incidents of [inappropriate conduct."]] (Thomas, dissenting); Hall v. Interstate Brands Corp., 395 Fed.Appx. 519, 523 (10th Cir. 2010)[Dismissing claim of hostile work environment where Plaintiff only alleged limited, isolated incidents of inappropriate conduct]; Brooks v. City of San Mateo, 229 F.3d 917, 924 (9th Cir. 2000) [Coworkers touching of plaintiff's stomach and fondling of her breasts found not to be sufficiently severe or pervasive conduct to alter plaintiff's terms and conditions of employment]; Saxton v. American Telephone and Telegraph Co., 10 F.3d 526, 528, 534-535 (7th Cir. 1993) [Finding insufficient harassment to constitute a hostile work environment where plaintiff was rubbed and kissed on only one occasion, and resisted an attempt to grope her on another].

Plaintiff argues, however, that the conduct at issue here, although only a single incident, was so severe as to meet the threshold for creating an abusive work environment sufficient to create an issue of fact for the jury. Cf. May v. Schering Corp., No. 09-170, 2010 WL 377012, at * 9 (D.Me. Jan. 26, 2010) [Elements for evaluating severe and pervasive conduct included the frequency of the conduct, its severity, whether it is physically threatening or humiliating, and whether it unreasonably interferes with an employee's work performance], adopted by, 2010 WL 672884 (D.Me. Feb. 22, 2010); Smith v. Sheahan, 189 F.3d 529, 533-534 (7th Cir. 1999) [Finding that single egregious act was sufficient to establish hostile work environment where plaintiff required surgery as a result of the conduct]; see also Muhhammad v. Klotz, 36 F.Supp 2d 240, 243 (E.D.Pa. 1999) [An issue is "genuine" if the evidence is such that a reasonable jury could find for the Plaintiff on the



issue]. However, it is not necessary for the Court to determine this issue, as even if it is assumed (for purposes of further discussion of the Defendants' summary judgment motion) that the conduct at issue here, although only a single event, was sufficient in its severity to establish an abusive work environment for purposes of a Title VII hostile work environment/sexual harassment claim, Plaintiff has failed to submit any evidence to establish the fourth prong of her proof scheme.

In evaluating the merits of a hostile work environment/sexual harassment claim, if the harassing employee is the victim's coworker (as is the case here), then the employer may be liable only if it was negligent in controlling the working conditions at the facility or failed to take prompt and effective remedial action once it was aware of the allegedly harassing behavior. Vance v. Ball State University, 133 S.Ct. 2434, 2439 (2013); DeClue v. Central Illinois Light Company, 223 F.3d 434, 437 (7th Cir. 2000) ["The [principle] defense [for a defendant employer] that the law recognizes to a . . . sexual-harassment charge . . . is that the defendant [did] all [it] could to prevent the harassment"], citing to Burlington Industries, Inc., 524 U.S. at 765; see also Spicer v. Virginia Department of Corrections, 66 F.3d 705, 710 (4th Cir. 1995) ["when an employer's remedial response results in the cessation of the complained of conduct, liability must cease as well"]. Here, Plaintiff has presented no evidence to show that the Defendants were negligent in controlling the working conditions at the work site. Cf. Vance, 133 S.Ct. at 2439 [Noting that in some cases a victim can prevail by showing that the employer was negligent in permitting the harassment to occur].[6] Further,

---

[6]Plaintiff did testify at her deposition, and argues in her brief, that the sexual harassment committed by Johnson "could have been avoided all together" because the Defendants had been notified that Johnson had a previous history of sexual assault. However, Plaintiff has presented no evidence to establish the truth of her claim that Johnson had a history of sexual assault, or that even if true, the Defendants had any such knowledge. Plaintiff testified at her deposition that after Johnson was terminated, while he was being escorted off the ship, a co-worker/friend of his named "Brad" told
(continued...)



8

as Plaintiff readily admits in her deposition testimony, when she notified her supervisors what Johnson had allegedly done, he was immediately terminated, and she never saw or heard from him again.[7]

Therefore, Plaintiff has failed to provide evidence sufficient to create a genuine issue of fact as to whether liability should be imputed to the Defendants for Johnson's conduct. As such, her hostile work environment/sexual harassment claim should be dismissed. Smith v. City of N. Charleston, 401 F.Supp.2d 530, 534 (D.S.C. 2005) [Finding that liability only attaches to an employer when, after acquiring actual or constructive knowledge of the allegedly harassing conduct, the employer fails to take prompt and adequate remedial action to correct it], citing Mikels v. City of Durham, 183 F.3d 323, 329, n. 4 (4th Cir. 1999); Spicer, 66 F.3d at 710 ["when an employer's remedial response results in the cessation of the complained of conduct, liability must cease as well"].

_____

[6](...continued)
her that his uncle had told him that Johnson had done the same thing to his cousin. Plaintiff further testified that "Brad's" uncle, whose name is Ronald Capers, called her and told her to give her lawyer his name, because he had told "Ray" not to hire Johnson. Plaintiff's Deposition, pp. 74-75. Of course, Plaintiff's own testimony as to what these other people allegedly told her is inadmissible hearsay, and she has otherwise provided no affidavits or deposition testimony from either of these two individuals themselves to provide any admissible evidence with respect to this unsubstantiated assertion. Haynes v. Waste Connections, Inc., No. 16-1922, 2017 WL 4616392 at * 5 (D.S.C. Oct. 13, 2017) citing Maryland Hwys. Contractors Ass'n Inc. v. Maryland, 933 F.3d 1246, 1251-1252 (4th Cir. 1991) ["Hearsay evidence, which is inadmissible at trial, cannot be considered on a motion for summary judgment"]. Therefore, this testimony is not a basis on which to find that the Defendants were negligent in hiring someone with a known history of sexual assault. Evans v. Technologies Applications & Serv. Co., 80 F.3d 954, 960 (4th Cir. 1996) ["unsubstantiated allegations" are insufficient to defeat summary judgment].

[7]Plaintiff's sworn testimony also directly contradicts the allegations she made in her Complaint that the Defendants allowed Johnson to "maintain his presence near the Plaintiff" and continue with his sexual harassment of her even after being informed by the Plaintiff that the contact was unwanted. See Complaint, ¶ 26.



## II.

### (Retaliation Claim)

Plaintiff also asserts in her First Cause of Action that she was unlawfully retaliated against by the Defendants for engaging in protected conduct (reporting Johnson's misbehavior). In order to prosecute her claim of retaliation, Plaintiff must have evidence sufficient to reasonably infer a prima facie case of retaliation: i.e. by showing that 1) she engaged in activity protected under Title VII, 2) the Defendant took an adverse employment action against her, and 3) a causal connection exists between the protected activity and the adverse action. Lettieri v. Equest, Inc., 478 F.3d 640, 650 (4th Cir. 2007); Williams v. Cerberronics, Inc., 871 F.2d 452, 457 (4th Cir. 1989); Munday v. Waste Management of North America, Inc., 126 F.3d 239, 242 (4th Cir. 1997); see Ennis v. National Ass'n of Business and Educational Radio, Inc., 53 F.3d 55, 58 (4th Cir. 1995) [The exact standard to be used in establishing a prima facie case is flexible depending on the factual situation and the claim alleged]. If a prima facie case is presented, the defendant employer then has the burden of producing a legitimate, non-discriminatory reason for its actions. If the employer can prduce a legitimate, non-discriminatory reason for its actions, the employee must then demonstrate that the Defendant's proffered reason is pretextual. Id.

Considered in the light most favorable to the Plaintiff, the evidence shows that Plaintiff engaged in activity protected by Title VII by complaining about Johnson's conduct. Cf. Rodas v. Town of Farmington, 918 F.Supp.2d 183, 189 (W.D.N.Y. Jan. 16, 2013)["'Protected activity' includes opposing employment practices that are prohibited under Title VII (such as discrimination based on race, color, religion, sex, or national origin), or making a charge of discrimination, or participating in any investigation, proceeding, or hearing arising under Title VII."].



It is also undisputed that the Defendants took an adverse employment action against the Plaintiff by terminating her employment. Cf. Ainsworth v. Loudon County School Bd., 851 F.Supp.2d 963, 976 (E.D.Va. 2012) ["Adverse employment actions are those that negatively impact the terms, conditions, or benefits of employment, . . . . termination being the quintessential example . . . ."].

  As for the third prong of the prima facie case, the Defendants do not specifically address whether or not there is sufficient evidence to establish a causal connection between Plaintiff's protected activity and her termination, instead arguing for dismissal of this claim based on the Defendants having a legitimate, non-discriminatory reason for Plaintiff's termination, and that Plaintiff has failed to present sufficient evidence to show this reason to have been pretextual. See Defendants' Brief, pp. 9-10. Therefore, since the Defendants do not specifically contest this prong of Plaintiff's prima facie case, and since Plaintiff was fired by the Defendant on July 2, 2015, only two weeks after she had reported Johnson's conduct and gotten him fired, the undersigned finds for purposes of summary judgment that Plaintiff has established her prima facie case of retaliation. See generally Mickey v. Zeidler Tool & Die Co., 516 F.3d 516, 525 (6th Cir. 2008)[Temporal proximity is sufficient to establish causal connection where an adverse employment action occurs very close in time to when an employer learns of a protected activity]; Pantoja v. American NTN Bearing Mfg. Corp., 495 F.3d 840, 850 (7th Cir. 2007) [Finding that timing was "suspicious enough to suffice to support [a] prima facie case."]; see also Blue v. International Broth. of Elec. Workers Local Union, 159, 676 F.3d 579, 586 (7th Cir. 2012)[Suspicious "[t]iming supports an inference of retaliation."]; Hunt-Golliday v. Metropolitan Water Reclamation District of Greater Chicago, 104 F.3d 1004, 1013 (7th Cir. 1997)[noting that "suspicious timing does constitute circumstantial . . . evidence to support a claim of discrimination"]; Chavez v. City of Arvada, 88 F.3d 861, 866 (10th Cir. 1996) [Holding



that a retaliatory motive may be inferred when an adverse action closely follows protected activity].

        With respect to whether the Defendants had a legitimate, non-discriminatory reason for Plaintiff's termination, the Defendants have submitted evidence to show that the Defendant Hitrak has a policy prohibiting the use of cell phones by employees while at the shipyard, and that Plaintiff was aware of this policy. See Defendants' Exhibit 4 [Personnel Policy Memorandum]; Defendants' Exhibit 5 [Hitrak Staffing Agreement]; see also Plaintiff's Deposition, pp. 43, 52. The Defendants' Personnel Policy Memorandum provides that "Employees found to be violating this policy are subject to disciplinary action, up to and including termination". See Defendants' Exhibit 4. Plaintiff also signed the Hitrak Staffing Agreement, which provides, in part: "I understand that the use of a Cellular Telephone while on a customer's property is strictly prohibited and may result in termination of my employment". See Defendants' Exhibit 5. It is further undisputed in the evidence that during the time at issue Plaintiff was at work, although on break, when she texted her daughter. Plaintiff's Deposition, pp. 101-103. The Defendants evidence shows that when Supervisor Paul Friedman confronted her about her cell phone use, Plaintiff was disrespectful and ignored Friedman's instructions to put her cell phone away, which resulted in her termination. See Defendants' Exhibit 6 [Friedman Affidavit]; Defendants' Exhibit 7 [Simmons Affidavit]. This evidence is sufficient to establish a legitimate, non-discriminatory reason for the Defendants' actions. See EEOC v. Clay Printing Co., 955 F.2d 936, 941 (4th Cir. 1991) [The defendant's burden of establishing a legitimate, non-discriminatory reason is only one of production, not of persuasion]; cf. Jones v. Gerwens, 874 F.2d 1534, 1540 (11th Cir. 1989) [Even if a Title VII claimant did not in fact commit the violation with which he is charged, an employer can successfully rebut any prima facie case of disparate treatment by showing that it honestly believed the employee committed the violation]. Therefore,



12

Plaintiff must present evidence of pretext in the Defendants' decision to terminate her employment in order to avoid summary judgment on her retaliation claim.

In order to show pretext, Plaintiff must show that "but for" the Defendants' intent to retaliate against her because of her having engaged in protected activity, she would not have been terminated. EEOC, 955 F.2d at 941; Melendez v. Board of Education for Montgomery County, ___ Fed.Appx. ___, 2017 WL 4512169 at * 3 (4th Cir. Oct. 10, 2017) [Title VII retaliation claims are proved according to traditional principles of but-for causation.]; Conkwright v. Westinghouse Elec. Corp., 933 F.2d 231, 234-235 (4th Cir. 1991). "Direct or indirect evidence of discriminatory motive may do, but 'the evidence as a whole... must be sufficient for a reasonable fact-finder to infer that the employer's decision was motivated by [retaliatory animus].'" LeBlanc v. Great American Insurance Co., 6 F.3d 836, 843 (1st Cir. 1993)(citing Goldman v. First Nat'l Bank, 985 F.2d 1113, 1117 (1st Cir. 1993)(quoting Connell v. Bank of Boston, 924 F.2d 1169, 1172, n. 3 (1st Cir. 1991), cert. denied, 111 S.Ct. 2828 (1991)); Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 141-143 (2000). Here, Plaintiff argues pretext is shown because her termination occurred only shortly after she had lodged her Complaint against Johnson (resulting in him being fired); she was terminated on her very first warning for this offense, even though she had incurred no previous write ups or warning for any work issues prior to that time, and even though usually only a warning is given to the employee for this offense; and because the Defendants gave a false reason for her discharge.

With respect to these assertions, Paul Friedman, the Defendant Detyens' safety director, confirmed that he did not know of any reprimands Plaintiff had received while being employed. Friedman Deposition, p. 11. Therefore, the evidence supports Plaintiff's claim that she had no prior disciplinary history in her job. Friedman further acknowledged that some people are just



given a warning for using a cell phone.  Id., p. 17.  Friedman testified the reason Plaintiff was terminated was because when he brought the issue to her attention, she screamed at him and then continued using her phone even after he had told her not to.  Id., pp. 15, 17.  However, Plaintiff disputes Friedman's testimony, testifying that that is not what happened.  Rather, Plaintiff testified that when she texted her daughter she was on a designated break in what is known as the "dog house".  Plaintiff's Deposition, pp. 102-103, 112.  Plaintiff testified that when Freidman saw her with her phone, he told her "I better not ever see that phone again.  Put it up.  I better not see it again", to which she responded "okay".  Id., p. 103.  Plaintiff testified that she did not yell at him, curse at him, or raise her voice, but simply said "okay".  Id., pp. 108-109.  Plaintiff testified that Friedman then started to walk away, but then stopped, turned around, and said "you know what?  Come with me".  Id., p. 103.  Friedman then told her she was fired.  Id., p. 104.  Plaintiff testified that while she did then yell at Friedman, that was not until *after* he had fired her.  Id., p. 104.

For purposes of summary judgment, the Court must accept Plaintiff's version of the facts to be true.  Pittman, 87 F.3d at 118.  Therefore, in determining whether there is sufficient evidence to create a genuine issue of fact as to whether the Defendants' stated reason for firing the Plaintiff is pretext, the Court must assume (again, for purposes of summary judgment only) that the Defendants' stated reason for Plaintiff having been terminated is not true, as Plaintiff testified that she never engaged in the conduct which Friedman testified was the reason she was fired.  Moreover, Plaintiff testified that "plenty of people get caught with a phone" and are not terminated, testimony that Friedman appears to confirm.  Id., p. 107; see also Friedman Deposition, p. 17.  If the fact finder believes Plaintiff's version of events, that fact coupled together with the fact that Plaintiff had gotten Johnson fired only a few weeks earlier could be sufficient to raise an inference that the Defendants



14

were just looking for an excuse to fire the Plaintiff because she was a troublemaker or had caused discord at the facility by filing her report of misconduct against Johnson. See Reeves, 530 U.S. at 141-143 [Setting forth the general proposition that where a Plaintiff presents a prima facie case together with sufficient evidence to conclude that the employer's asserted justification for the employment decision is false, a trier of fact can conclude that the employer unlawfully discriminated]; see also Chavez v. City of Arvada, 88 F.3d 861, 866 (10th Cir. 1996) [Holding that a retaliatory motive may be inferred when an adverse action closely follows protected activity]; cf. Lloyd v. Georgia Grill Corp., 961 F.2d 1190, 1195 (5th Cir. 1990) [Holding that when an employer's stated motivation for an adverse employment decision involves the employee's performance, but there is not supporting documentation, a jury can reasonably infer pretext].

Of course, in order to demonstrate that her employer's stated reason for her termination is pretexual, Plaintiff is require to prove *both* that the reason given by her employer was false, *and* that discrimination was the real reason. Thomas v. CMC Steel Fabricators, Inc., No. 12-1249, 2014 WL 1320003, at * 8 (D.S.C. Mar. 31, 2014), citing Adams v. Trustees of the University of North Carolina Wilmington, 640 F.3d 550, 560 (4th Cir. 2011). However, because discerning an employer's motives in a case like this is always difficult, as it is the rare employer who is so unwise as to make incriminating statements concerning its motivation so as to provide a Plaintiff with concrete evidence to support their claim, the law provides that evidence derived from circumstances and inferences may be used to support a claim, with one way to accomplish this goal being "by showing that the employer's proffered explanation is unworthy of credence". Holland v. Washington Homes, Inc., 487 F.3d 208, 214 (4th Cir. 2007). In this case, the evidence (considered in the light most favorable to the Plaintiff) shows that Plaintiff was terminated from her job just a few a weeks



15

after she had caused the termination of another employee by reporting sexual harassment, and that the stated reason given by her employer for her termination is untrue.

Hence, while the Defendants have submitted substantial evidence to justify the employment decision taken, the undersigned finds that, under the applicable caselaw, the circumstantial evidence as a whole is sufficient to require a determination of this claim by the finder of fact. Reeves, 530 U.S. at 141-143 [Setting forth the general proposition that where a Plaintiff presents a prima facie case together with sufficient evidence to conclude that the employer's asserted justification for the employment decision is false, a trier of fact can conclude that the employer unlawfully discriminated]; Holland, 487 F.3d at 214; Chavez, 88 F.3d at 866 [Holding that a retaliatory motive may be inferred when an adverse action closely follows protected activity]; Price v. Thompson, 380 F.3d 209, 212 (4th Cir. 2004) ["[T]he plaintiff can prove pretext by showing that the [Defendants] explanation is unworthy of credence].

Therefore, the Defendants are not entitled to summary judgment on Plaintiff's retaliation claim at this time. Muhammad v. Klotz, 36 F.Supp.2d at 243 ["Thus, at the summary judgment stage the only inquiry is the threshold one of determining whether there is a need for a trial, that is, 'whether the evidence presents a sufficient disagreement to require submission to [the jury] or whether it is so one-sided that one party must prevail as a matter of law'"], citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250-252 (1986); see also Iannillo v. County of Orange, 187 F.Supp.2d 170, 185 (S.D.N.Y. 2002)[At summary judgment, the Court expresses no view as to a plaintiff's chance of success on the merits of his claim at trial, and bases its decision only on whether there is a material issue of fact as to causation that renders summary judgment inappropriate.].



## III.

### (After - Acquired Evidence)

The Defendants also argue that they are entitled to summary judgment by virtue of the after - acquired evidence doctrine, which (Defendants argue) allows an employer to avoid liability altogether if "it is proven that the employee's wrongdoing was of such severity that the employee in fact would have been terminated on those grounds alone if the employer had known of it at the time of the discharge". Lewis v. Fisher Serv. Co., 495 S.E.2d 440, 445 (S.C. 1998). Defendants argue (and indeed Plaintiff does not dispute) that Plaintiff provided false and misleading information on her job application with Hitrak, in that she failed to disclose a prior strong arm robbery conviction, provided false and misleading information regarding guilty pleas to three different charges involving unlawful neglect and conduct toward a minor, and provided false and misleading information regarding her prior employment. See generally, Plaintiff's Deposition, pp. 34-38. Defendants assert they have only now learned of these falsehoods since the filing of this case, and that had Hitrak known or learned of the false and misleading information Plaintiff provided on her employment application, she would have been terminated. Therefore, Defendants argue that because Hitrak would have terminated the Plaintiff based on the falsehoods contained in her employment application alone (had Hitrak known about them), the after - acquired evidence doctrine "completely bars her claims against the Defendants". Defendants' Brief, p. 11; see also Freidman Affidavit, ¶ 9.

However, while not disputing Defendants' evidence on this issue, Plaintiff argues that the after - acquired evidence doctrine does not shield an employer from liability for discharging an employee for a discriminatory reason, and the undersigned is constrained to agree. In the Fourth Circuit, evidence of employer wrongdoing acquired after a wrongful termination may only serve to



17

limit an award of back pay and disentitle the employee to front pay and reinstatement, it does not negate the employer's underlying liability for an employee's unlawful termination. <u>See</u> <u>Harmon v. C. B. Squared Services, Inc.</u>, 624 F.Supp.2d 459, 469 (E.D.Va. 2009), citing <u>Russell v. Microdyne Corp.</u>, 65 F.3d 1229, 1238 (4th Cir. 1995); <u>cf.</u> <u>Orshal v. Bodycote Thermal Processing, Inc.</u>, No. 15-674, 2016 WL 4007610, at * 3 (M.D.N.C. July 26, 2016) ["The after - acquired evidence doctrine acts to limit an employer's liability for damages in an unlawful discharge case when evidence discovered after an employee's termination would have led to that employee being fired had the company known of it earlier", citing <u>Deltek, Inc. v. Dept. of Labor, Administrative Review Bd.</u>, No. 14-2415, 2016 WL 2946570, at * 9 (4th Cir. May 20, 2016).

Therefore, while this after -acquired evidence may serve to limit Plaintiff's damages in this case, it is not a basis on which to dismiss Plaintiff's case.

## IV.

### (State Law Negligent Supervision Claim)

In her Second Cause of Action, Plaintiff alleges a state law claim for negligent hiring, training and supervision. Plaintiff alleges that the "Defendant" was negligent, wanton, reckless and/or acted with deliberate indifference by failing to adequately monitor and supervise the hiring practices of its personnel to ensure that only qualified applicants were hired, by failing to adequately train personnel, and by failing to supervise and correct actions of its personnel when they knew of should of known of improper conduct.

Defendants assert that this claim is barred by the exclusive remedy provision of the South Carolina Workers Compensation Act, and should therefore be dismissed. The undersigned agrees. South Carolina courts applying § 42-1-540 [the exclusive remedy provision of the Workers



Compensation Act] have specifically held that an employee's claims against an employer for injury based on negligent supervision are covered by the Workers' Compensation Act. See Dickert v. Metropolitan Life Ins. Co., 428 S.E.2d 700, 701 (S.C. 1993)[holding that the Act provides the exclusive remedy for work-related injuries, and that claims for negligence, including hiring, retention, and supervision, as well as emotional distress are covered by the Act]; Palmer v. House of Blues Myrtle Beach Restaurant Corp., No. 05-3301, 2006 WL 2708278, at * 3 (D.S.C. Sept. 20, 2006); Loges v. Mack Trucks, 417 S.E.2d 538 (S.C. 1992)[Dismissal of claim of negligent supervision under Workers Compensation Act]; see also Powell v. Vulcan Materials Co., 384 S.E.2d 725 (S.C. 1989); Thompson v. J. A. Jones Const. Co., 19 S.E.2d 226 (S.C. 1942); Washington v. Hilton Hotels Corp., No. 07-2694, 2008 WL 747792, at * 4 (D.S.C. Mar. 17, 2008); Ray v. Bechtel Savannah River, Inc., No. 06-2946, 2007 WL 1960587 (D.S.C. July 2, 2007)[Granting motion to dismiss]. This finding is the same even where, as here, the Defendants' conduct is alleged to have been wanton, willful and reckless. Washington, 2008 WL 747792, at * 7; Palmer v. House of Blues Myrtle Beach Restaurant Corp., 2006 WL 2708278, at * 3.

In her response brief, Plaintiff does not provide any specific arguments for why this claim should be allowed to proceed, instead simply stating that "the Court has overruled multiple cases to provide the Circuit Court with subject matter jurisdiction to hear a Plaintiff's tort claims". Plaintiff then cites several cases. See Plaintiff's Brief, pp. 6-7. However, Plaintiff does not explain how the cases she cites in her brief allow her to proceed with this claim. For example, the Dockins case Plaintiff cites[8] held that an injury to reputation resulting from libel, as well as such state law claims as malicious prosecution, false imprisonment, invasion of privacy, or false arrest do not fall

---

[8]Dockins v Ingles Mkts., Inc., 411 S.E.2d 437 (S.C. 1991).



under the exclusiveness clause of the Workers Compensation Act. <u>Dockins</u>, 411 S.E.2d at 438. None of those claims are at issue here. Further, while South Carolina Courts applying § 42-1-540 have also held that a workplace injury is not covered by the South Carolina Workers Compensation Act if the injury is inflicted by an employee who acts with a specific intent to injure, that exception only applies when the allegedly intentional conduct was committed by the employer through an "alter ego" of the employer itself. <u>See</u> <u>Edens v. Bellini</u>, 597 S.E.2d 863, 869-870 (S.C.Ct.App. 2004)["An exception to the exclusivity provision exists where the injury is not accidental but rather results from the intentional act of the employer or its alter ego."]; <u>Sibert v. Raycom Media, Inc.</u>, No. 17-1544, 2017 WL 3721238 at * 2 (D.S.C. Aug. 29, 2017) ["[T]he alter ego exception only applies to dominant corporate owners and officers"]. Plaintiff has not argued, or even alleged, that Johnson was an "alter-ego" of the Defendant Corporations. <u>See also</u> <u>Dickert</u>, 428 S.E.2d at 701 [To fall under this exception, the tortfeasor must be a "dominant" corporate owner or officer of the employer].

Finally, to the extent Plaintiff's contention may be that the harm she suffered was as a result of her termination, and that termination is not a Workers Compensation event, "a termination necessarily arises out of the employment relationship." <u>Rogers v. Piggy Wiggly Carolina Co., Inc.</u>, No. 09-2016, 2009 WL 4985813, at * 4; <u>see also</u> <u>Baggott v. Southern Music, Inc.</u>, 496 S.E.2d 852, 854 (S.C. 1998); <u>cf</u>. <u>Ward v. City of Myrtle Beach</u>, 457 F.Supp.2d 625, 632, 646-647 (D.S.C. 2006)[holding that terminated employee's state law outrage and negligence claims were barred by South Carolina's Workers Compensation Act]; <u>Taylor v. Cummins Atlantic, Inc.</u>, 852 F.Supp. 1279, 1282-1283 (D.S.C. 1994)[Terminated employee's outrage claim precluded by S.C. Worker's Compensation Act]. Therefore, Plaintiff's Second Cause of Action for negligent supervision should be dismissed.



# V.

## (Employer Liability)

Finally, the Defendant Detyens argues that, even if the case is otherwise allowed to proceed, it is entitled to dismissal as a party Defendant because it was not Plaintiff's employer. On review of the evidence, it does not appear to be contested that Plaintiff was hired by the Defendant Hitrak, which is a staffing company that provides employees for other businesses, and that she had then been assigned by Hitrak to work at the Detyens Shipyard. See Plaintiff's Deposition, p. 6. See also Plaintiff's Deposition, Exhibit 3, (Application for Employment), p. 99; Defendants' Exhibit 5 (Hitrak Staffing Memorandum). However, no further information or argument on this defense is provided by Detyens, while Plaintiff argues that Detyens and Hitrak qualify as "joint employers" for purposes of her claims.

In Butler v. Drive Automotive Industries of America, Inc., 793 F.3d 404 (4th Cir. 2015), the Fourth Circuit held that the joint employment doctrine was "wholly consistent with our precedent", and is focused on "determining which entities actually exercise control over an employee". Id., at 409. The Butler Court noted that the joint employment doctrine recognizes the "reality of changes in modern employment, in which increasing numbers of workers are employed by temporary staffing companies that exercise little control over their day-to-day activities", and that the joint employment doctrine therefore serves to "prevent[ ] those who effectively employ a worker from evading liability by hiding behind another entity, such as a staffing agency". Instead, the emphasis is on whether more than one entity "exercise[s] significant control over the same employees". Id., at 410.

The Court in Butler listed nine factors for courts in this Circuit to use in determining

21

whether an individual is jointly employed by two or more entities: 1) authority to hire and fire the individual; 2) day-to-day supervision of the individual, including employee discipline; 3) whether the putative employer furnishes the equipment used and the place of work; 4) possession of and responsibility over the individual's employment records, including payroll, insurance, and taxes; 5) the length of time during which the individual has worked for the putative employee; 6) whether the putative employer provides the individual with formal or informal training; 7) whether the individual's duties are akin to a regular employee's duties; 8) whether the individual is assigned solely to the putative employer; and 9) whether the individual and putative employer intended to enter into a employment relationship.  However, no single factor is dispositive, and courts can also modify the factors to meet a specific industry context.  Id., at 414-415.

        In this case, the evidence shows that Plaintiff was hired by Hitek, the place of her work was Detyens Shipyard, and it is apparent that Plaintiff was assigned solely to Detyens Shipyard for her work.  Additionally, while Plaintiff interacted with several supervisors (as testified to in her deposition), and it is unclear who all these supervisors worked for or reported to, it is apparent that the supervisors involved in the critical decisions made in this case came from both Hiteck and Detyens.  Complaint, ¶ ¶ 14-15; Friedman Deposition, p. 6.  Therefore, without any additional evidence or argument from the Defendant Detyens, and in light of the Fourth Circuit's holding in Butler, the undersigned is unable to find at this time as a matter of law that Detyens was not Plaintiff's employer such that Detyens should be dismissed as a party Defendant in this case. Spratley v. Hampton City Fire Dept., 922 F.Supp. 535, 542 (E.D.Va. 1996) [Party not entitled to dismissal unless "[n]o reasonable trier of fact could conclude" that they are subject to liability]; cf. Butler, 793 F.3d at 415 [Noting that although one company was the entity that formally hired the



22

plaintiff, other entities had effective control over the plaintiff's employment and input into whether the plaintiff should be disciplined or terminated sufficient to subject those other entities to potential liability].

### Conclusion

Based on the foregoing, it is recommended that the Defendants' motion for summary judgment be **granted** with respect to Plaintiff's Title VII sexual harassment/hostile work environment claim and with respect to her state law claim for negligent supervision. However, Defendants' motion should be **denied** with respect to Plaintiff's Title VII retaliation claim for the reasons stated. Defendants' motion for summary judgment based on the after - required evidence doctrine should also be **denied**, as should the Defendant Detyens' motion to be dismissed as a party Defendant based on the joint employer doctrine.

The parties are referred to the Notice Page attached hereto.

_____
Bristow Marchant
United States Magistrate Judge

November 3, 2017
Charleston, South Carolina



23

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume
United States District Court
Post Office Box 835
Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).